673 A.2d 888

**Charles D. HAHN, Appellant,**

v.

**Howard A. RICHTER, M.D. and The
Upjohn Company, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1994.

Decided March 28, 1996.

Reargument Denied May 24, 1996.

Jeffrey S. Kahn, Norristown, Barton Haines, Bala Cynwyd, for C.D. Hahn.

Laurence M. Kelly, Montrose, for amicus—Pa. Trial Lawyers Assoc.

Thomas M. Kittredge, Philadelphia, for H.A. Richter, M.D.

Lane D. Bauer, David W. Brooks (Pro–Hac–Vice), for Upjohn Company.

Edward W. Madeira, Jr., Philadelphia, for P.L.A.C.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION OF THE COURT*

FLAHERTY [1], Justice.

This is an appeal by allowance from an *en banc* decision of the Superior Court which affirmed a judgment entered in favor of the appellee, Upjohn Company (Upjohn), in a negligence and strict liability action brought by the appellant, Charles D. Hahn. The factual background of the case is as follows.

From 1977 to 1980, appellant was treated for back pain by Dr. Howard A. Richter. Treatment included several surgical procedures and a number of intrathecal (into the spine) injections of Depo–Medrol, a drug manufactured by Upjohn. A package insert accompanying Depo–Medrol provided warning to physicians that arachnoiditis, a scarring of nerves in the lower back, had been reported when the drug was administered intrathecally. Also, intrathecal injection was not one of the Federal Drug Administration approved usages for the drug.

Appellant developed arachnoiditis. In an effort to remove scar tissues associated with that condition, further surgery was performed, but, in the course thereof, a nerve root was severed resulting in serious and permanent injury.

1. This case was reassigned to this writer.

In 1982, suit was filed against Dr. Richter and Upjohn. A release in favor of Dr. Richter was later executed in exchange for valuable consideration. In 1989, the claim against Upjohn proceeded to trial. Appellant attempted to prove that his arachnoiditis was caused by Depo–Medrol and that Upjohn failed to provide adequate warnings to physicians regarding intrathecal use of the drug. Extensive evidence was adduced by both parties as to causation and as to the adequacy of warnings provided by the package insert. The jury returned a verdict in favor of Upjohn, and judgment was entered accordingly.

At issue is whether the trial court erred in its instruction to the jury regarding applicable theories of liability. An instruction was given that liability could be found if appellant's injuries were caused by a negligent failure of Upjohn to provide adequate warnings regarding Depo–Medrol. The court declined, however, to instruct on strict liability, reasoning that in cases where a failure to provide sufficient warnings relative to prescription drugs has been alleged, negligence is the only recognized basis for recovery. In reaching this conclusion, reliance was placed on our decisions in other prescription drug liability cases, particularly those applying comments j and k of the Restatement (Second) of Torts § 402A. We find no error and thus affirm.

Comment k, titled "Unavoidably unsafe products," denies application of strict liability to products such as prescription drugs, which, although dangerous in that they are not without medical risks, are not deemed defective and unreasonably dangerous when marketed with proper warnings.[2] As to what

2. Comment k provides:

There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not

constitutes proper warnings, comment j, titled "Directions or warning," provides that a seller must warn of risks, not generally known and recognized, of which he *has or reasonably should have knowledge,* and, further, that it can be assumed that where warnings are given they will be read and heeded.[3]

> defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.
>
> (Emphasis in original).

3. Comment j provides:

> In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, *if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons,* warning as to use may be required.
>
> But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recognized. Again the dangers of alcoholic beverages are an example, as are also those of foods containing such substances as saturated fats, which may over a period of time have a deleterious effect upon the human heart.
>
> *Where warning is given, the seller may reasonably assume that it will be read and heeded;* and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

In *Incollingo v. Ewing*, 444 Pa. 263, 286–88, 282 A.2d 206, 219–20 (1971), where the manufacturer of a prescription drug was alleged to have caused injury by providing inadequate warnings to physicians about dangers associated with use of the drug, the manufacturer's duty to exercise reasonable care in providing adequate and proper warnings was recognized by this court. Negligence, not strict liability, was alleged as the basis for recovery. We noted that under comments j and k strict liability was not applicable to the case. 444 Pa. at 287–88, 282 A.2d at 219–20. We further stated:

> Since the strict liability rule of § 402A is not applicable, the standard of care required is that set forth in § 388 of the Restatement dealing with the liability of a supplier of a chattel known to be dangerous for its intended use. Under this section, the *supplier has a duty to exercise reasonable care to inform* those for whose use the article is supplied of the facts which make it likely to be dangerous.

444 Pa. at 288 n. 9, 282 A.2d at 220 n. 8 (emphasis added).

In *Baldino v. Castagna*, 505 Pa. 239, 478 A.2d 807 (1984), suit was brought against a drug manufacturer on the basis of allegedly inadequate product warnings. Reaffirming that the basis of liability in such a case is the failure to exercise reasonable care rather than strict liability, this court stated:

> In *Incollingo* we held that, assuming proper preparation and warning, a manufacturer of drugs is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk. *Id.*, 444 Pa. at 288, 282 A.2d at 221. Rather, such a *manufacturer is liable only if he fails to exercise reasonable care to inform* those for whose use the article is supplied of the facts which make it likely to be dangerous. *Id.*, 444 Pa. at 288 n. 8, 282 A.2d at 220 n. 8 (citing Section 388 of the Restatement (Second) of Torts).

505 Pa. at 244, 478 A.2d at 810 (emphasis added). Reliance was again placed on the principles set forth in comments j and

(Emphasis added).

k to deny application of strict liability.[4]  *Id.* at 247, 478 A.2d at 811–12.

*Incollingo* and *Baldino,* as well as comments j and k, make it clear that where the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, i.e., the manufacturer's negligence, is the only recognized basis of liability.  Accord *Mazur v. Merck & Co., Inc.,* 964 F.2d 1348, 1353–55 (3d Cir.1992) (interpreting *Incollingo* and *Baldino* as making a prescription drug manufacturer's liability for failure to warn rest on negligence, not strict liability), cert. denied, 506 U.S. 974, 113 S.Ct. 463, 121 L.Ed.2d 371 (1992).

Hence, the trial court properly instructed that Upjohn could be found liable if appellant's injuries were caused by a negligent failure to provide adequate product warnings.  The court did not err in declining to give an instruction on strict liability. The Superior Court properly affirmed.

Order affirmed.

PAPADAKOS, J., and MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

CAPPY, J., files a dissenting opinion which is joined by CASTILLE, J.

CAPPY, Justice, dissenting.

Today the majority creates an exemption which removes all prescription drugs from the ambit of strict liability failure to warn.  Because I find the reasoning employed by the majority to be flawed, I must respectfully dissent.

In support of its holding, the majority relies primarily on two cases: *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971) and *Baldino v. Castagna,* 505 Pa. 239, 244, 478 A.2d 807

4. Compare *Coyle v. Richardson–Merrell, Inc.,* 526 Pa. 208, 212–16, 584 A.2d 1383, 1385–87 (1991) (applying comment k to exclude strict liability for pharmacists who sell prescription drugs with inadequate warnings); *Cafazzo v. Central Medical Health Services, Inc.,* 542 Pa. 526, 536, 668 A.2d 521, 526 (1995) (noting exemption from strict liability for prescription drugs under comment k).

(1984). Reliance on these cases is questionable. In both cases, the plaintiffs' actions sounded in *negligence*, and not strict liability. *See Incollingo*, 444 Pa. at 269 and 285, 282 A.2d at 211 and 218; *Baldino*, 505 Pa. at 242, 478 A.2d at 808. Therefore, this Court's employment of a negligence standard in these cases was not, as the majority seems to believe, tantamount to creating a holding that in cases concerning prescription drugs, negligent failure to warn and strict liability failure to warn are coextensive.

Not only are the cases cited by the majority inapposite, but existing case law is actually contrary to the position it adopts. In support of its position that, in the context of prescription drugs, strict liability failure to warn is nothing more than a negligence theory, the majority relies on comment j to § 402A. It fixes its holding on that part of the comment which declares that a seller must warn of risks, not generally known and recognized, "if [the seller] has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger." Majority op. at 561, n. 3 (citing comment j). Yet, in utilizing this portion of comment j, the majority fails to note that this Court has not previously adopted this reasoning.[1] To the contrary, this Court has steadfastly refused to adopt any theories which would import negligence concepts into a strict liability cause of action. *See, e.g., Kimco Development Corporation v. Michael D's Carpet*, 536 Pa. 1, 8, 637 A.2d 603, 606 (1993) (in analyzing a strict liability failure to warn claim, this

---

**1.** To my knowledge, comment j has been cited by this Court only three times. On one occasion, comment j was cited for the proposition that a warning is not required "when the danger, or potentiality of danger, is generally known and recognized." *Sherk v. Daisy–Heddon, Inc.*, 498 Pa. 594, 597, n. 2, 450 A.2d 615, 617, n. 2 (1982). On the other two occasions, the following portion of comment j was cited:

> Where warning is given the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for its use if followed, is not in defective condition nor is it unreasonably dangerous.

*Baldino v. Castagna*, 505 Pa. at 247, 478 A.2d at 811; *Incollingo*, 444 Pa. at 287, 282 A.2d at 219. On none of these occasions did the Court adopt that portion of comment j which requires a warning to be given only when the seller knew or had reason to know of the presence of a danger.

Court noted that it has been "adamant that negligence concepts have no place in a strict liability action.") Simply stated, the law in Pennsylvania has always been that negligence theory has no place and deserves no consideration in resolving issues of strict liability.

Apparently, the majority has concluded that, at least with regard to matters involving drugs, negligence principles are now necessary and warranted. Not only do I vigorously disagree that this divergence from our established case law is necessary, but I believe that this approach is clearly unwarranted and extremely dangerous in its potential to undermine clear precedent which, based in well-ordered public policy, sets clear lines of responsibility for harm caused by manufactured products. It is my considered belief that the negligence concepts of comment j have no more place where the defective product is a prescription drug than they do where the defective product is a lawn mower, an automobile, or any other product manufactured and sold within our society.

What I find to be the most disturbing aspect of the majority's opinion is its neglect to reveal its analysis of the policy concerns attendant to this important issue. We have repeatedly stated that in determining whether strict liability should apply in a given situation, the relevant policy concerns must be addressed. *See, e.g., Coyle v. Richardson–Merrell, Inc.,* 526 Pa. 208, 212, 584 A.2d 1383, 1385 (1991). The majority has utterly and inexplicably failed to do this. The majority does not analyze the competing concerns of shielding the pharmaceutical industry and compensating injured patients and does not balance these concerns against one another; rather, it favors one side of the equation absolutely while the other is unaccountably made to bear the cost. The majority's failure to provide an analysis of these concerns is incomprehensible.

I can only speculate that in finding for the pharmaceutical company, the majority concluded that protecting the pharmaceutical company's interests would diminish the cost to society. I believe that the majority cannot take comfort in the belief that it has safeguarded our society from a pernicious expense

**566**

for such a supposition is not logical. Erasing the cause of action in strict liability for failure to warn does not erase the cost associated with these actions. The damages defective drugs have caused, and will cause in the future, are not magically eradicated by the majority's refusal to allow the drug companies to be strictly liable for their failure to warn. Rather, the majority has thrust the expense of defective prescription drugs onto those whom these products were supposed to aid. In essence, the majority's holding has created a class of unpaid guinea pigs. I find this to be unconscionable.

For the foregoing reasons, I respectfully dissent.

CASTILLE, J., joins this dissenting opinion.