J-S24017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WILLIAM B.C. VITEZ AND DAWN A. VITEZ, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MARMAXX OPERATING CORP., AND THE T.J.X. COMPANIES, INC., | |
| Appellee | No. 1617 MDA 2015 |

Appeal from the Judgment Entered September 15, 2015
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2010-00506

BEFORE:  GANTMAN, P.J., BOWES, AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 14, 2016**

William B.C. and Dawn A. Vitez appeal from the judgment entered against them after a jury found in favor of Appellees, Marmaxx Operating Corporation and The T.J.X. Companies, Inc., in this personal injury action based on negligence.  We affirm.

Appellants instituted this action by writ of summons on March 8, 2010, seeking damages for injuries that they allegedly sustained on March 9, 2008, at the T.J. Maxx store located in Lebanon, Pennsylvania, which is owned and operated by Appellees.  Appellants averred that at approximately 3:00 p.m. on the day in question, automatic doors at the entrance to that store prematurely closed on Mr. Vitez, injuring his right hand, arm, and shoulder.

Appellants maintained that the accident caused injuries to Mr. Vitez that affected his ability to earn a living as a violinist.

The matter proceeded to a jury trial. Mr. and Mrs. Vitez testified as follows. There were two sets of doors to the entrance to the store. They manually opened the first set. The second set was automatic, opened toward the entrance rather than toward the inside of the store, and abruptly closed on Mr. Vitez as he was walking through them. The door struck his right hand, arm, and shoulder, and caused him to spill coffee that he was holding. Mr. Vitez reported the accident to the store manager, Thomas Struebel. Appellants represented that Mr. Struebel told them that there were "problems with that door before. He was going to put a sign on the door to be careful and it's not working properly." N.T. Trial, 8/11/15, at 16. Appellants said that Mr. Struebel apologized for the accident.

Mr. Struebel, the store manager for the T.J. Maxx store from April 2004 through February 2009, provided contrary evidence than that proffered by Appellants. During his videotaped deposition taken for purposes of trial, Mr. Struebel explained that the door in question was not fully automatic. It was "a push-assist door, you actually have to push on the handle and once it feels your pressure on it, it would automatically open for you." Deposition of Thomas Struebel, 8/4/15, at 7. That witness stated, "I don't remember having any problems with" either set of doors at the entrance to the Lebanon T.J. Maxx. *Id*. at 8.

Mr. Struebel acknowledged meeting with Mr. Vitez on March 9, 2008, and said that Mr. Vitez told him that "he was coming into the door and hit his hand on the [inside entrance] door." *Id*. at 8. Mr. Vitez completed an incident report and photographed the door, which had coffee on it. Mr. Struebel noticed that Mr. Vitez's hand was red but could not ascertain if it was from the spilled coffee or from being struck.

Thereafter, Mr. Struebel went back "to clean the door off and checked it to see if it was operating properly." *Id*. at 9. Mr. Struebel reported that the door "operated fine" in that it "was opening and closing regularly." *Id*. Mr. Struebel was asked and answered the following questions:

> Q. Mr. Struebel, with respect to the inner entranceway door that we were talking about, during the course of the day in question on March 8, 2008, were you aware of that door malfunctioning or not acting properly at any point before Mr. Vitez reported his incident to you?
>
> A. No.
>
> Q. Do you have any recollection of that door malfunctioning or not acting properly the day before this incident occurred?
>
> A. No.
>
> Q. Do you have any recollection as you're sitting here today of that door not acting properly or malfunctioning a week before this incident occurred?
>
> A. No.
>
> Q. Do you have any recollection or any knowledge of that door not operating properly a month before this incident in March 2008?

A. No.

*Id*. at 10-11. Finally, Mr. Struebel said that there was no instance of the door failing to properly function between January and March 2008. He also stated that he did not call for maintenance on the door on March 9, 2008 because it had not malfunctioned previously and was operating properly after Mr. Vitez left. Mr. Struebel also testified that he was ninety-nine percent sure that the doors in question did not open toward the entrance but, instead, opened toward the inside of the store and that Appellants were incorrect in reporting that the automatic doors opened toward rather than away from them.

After the incident, Mr. Vitez went to the emergency room at a local hospital, where he complained about pain in his right hand radiating into his fingers and arms. His right hand was x-rayed and displayed no fracture. He was diagnosed with a bruise to the right hand. At that time, he did not complain of pain in the right shoulder. Mr. Vitez began to experience pain in the right shoulder, and he presented medical testimony indicating that he had a pre-existing torn rotator cuff in the right shoulder that was aggravated by the accident.

The jury heard evidence that in June 2007, nine months before this incident, Mr. Vitez slipped, fell, and landed on the same hand that was purportedly struck by the door at the T.J. Maxx store. In October 2007, five months before the alleged accident herein, Mr. Vitez suffered injuries to his

- 4 -

right shoulder when a door at Hershey Hospital closed on him. Mr. Vitez was in a motor vehicle accident in 2000, instituted a lawsuit, and claimed therein that the accident had affected his ability to play the violin.

The jury concluded that Appellees were not negligent, and this appeal followed denial of Appellants' post-trial motions. They purport to raise ten issues on appeal:

> 1. Did the trial court err in denying Plaintiffs' Motion for Post-Trial Relief and failing to award judgment notwithstanding the verdict in favor of Plaintiffs or award a new trial in that the Defendant's store manager, Thomas Struebel, admitted to both Plaintiffs at the time of the incident that he had been having problems with the door that struck Mr. Vitez and that he had intended to put up a warning sign but had not yet done so. Mr. Struebel did not deny making the admission to the Plaintiffs in his testimony at trial and the admission constitutes a failure on the part of the Defendant to comply with its duty under the law and as a result Defendant was negligent as a matter of law?
>
> 2. Did the trial court err in refusing to award sanctions against Defendant, including a finding of liability as a matter of law, for spoliation of evidence, namely replacing the doors in question while the litigation was pending without notice to Plaintiff's counsel, after Plaintiff's counsel had asked to set up an inspection time, and before Plaintiffs and Plaintiffs' expert had an opportunity to inspect them, and the Defendant failing to produce in discovery photographs taken of the doors in question and Plaintiff's injuries by the store manager on the date of the incident?
>
> 3. Did the trial court err in denying Plaintiffs' request for standard points for charge 5.60 and 5.70 with respect to the Defendant's spoliation of evidence in replacing the doors in question while the litigation was pending and before Plaintiffs and Plaintiffs' expert had an opportunity to inspect them, and the Defendant failing to produce in discovery photographs taken of the doors in question and Plaintiff's injuries by the store manager on the date of the incident?

4. Did the trial court err in denying Plaintiffs' request for standard point for charge 13.30 which is the *res ipsa loquitur* charge?

5. Did the trial court err in granting Defendant's Motion in Limine and limiting the testimony of Plaintiffs' expert witness, Len McCuen, in his testimony at trial?

6. Did the trial court err in prohibiting the testimony at trial of Plaintiffs' engineering and architecture expert, Len McCuen, regarding the failure of Defendant to comply with manufacturing, safety, and industry standards with respect to the inspection and maintenance of the doors in question?

7. Did the trial court err in refusing to allow the Plaintiff and Plaintiffs' expert to present evidence regarding the full service record history with respect to the entrance and exit doors in question especially in light of Defendant's admission that it had no regular inspection or maintenance of the doors. (Plaintiffs' exhibit 3)?

8. Did the trial court err in limiting the Plaintiffs' cross examination of Thomas Struebel, the store manager, with respect to other service calls regarding the doors in question in the front of the store prior to the date of Plaintiffs incident and failing to allow cross-examination with respect to Mr. Struebel's involvement in adjusting the timing on the doors in question immediately subsequent to the incident in question?

9. Did the trial court err in sustaining Defendant's counsel's objection to Plaintiffs' counsel's closing argument regarding the replacement of the doors by Defendant which had been testified to during the trial without objection?

10. Did the trial court err in permitting the Defendant to have a second defense medical expert examination of the Plaintiff?

Appellants' brief at 2-4. Issues five and six are identical and will be resolved together.

Appellants' first claim is that the trial court should have entered judgment in their favor due to alleged admissions made by Mr. Struebel.

> When reviewing the propriety of an order granting or denying judgment notwithstanding the verdict, we must determine whether there is sufficient competent evidence to sustain the verdict. We must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. We apply this standard in all cases challenging the grant of a motion for J.N.O.V.
>
> Pennsylvania law makes clear that a judgment notwithstanding the verdict is proper only in clear cases where the facts are such that no two reasonable minds could disagree that the verdict was improper. Questions of credibility and conflicts in evidence are for the fact-finder to resolve. This Court will not substitute its judgment based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned.

*Dubose v. Quinlan*, 125 A.3d 1231, 1237-38 (Pa.Super. 2015) (citations omitted).

Appellees' liability herein was premised upon the duty imposed under Restatement (Second) of Torts § 341A, which is the duty owed by a possessor of land to a business invitee. As we recently observed, in *Carrender v. Fitterer*, 469 A.2d 123 (Pa. 1983), our Supreme Court outlined that:

> Possessors of land owe a duty to protect invitees from foreseeable harm. Restatement (Second) of Torts, §§ 341A, 343 & 343A. With respect to conditions on the land which are known to or discoverable by the possessor, the possessor is subject to liability only if he,

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

Restatement, supra, § 343.

***Reinoso v. Heritage Warminster SPE LLC***, 108 A.3d 80, 85 (Pa.Super. 2015) (*en banc*).

Appellants assert that judgment should have been entered in their favor because Mr. Struebel admitted to them that he knew about the condition of Appellees' property, that the inside entrance automatic doors were shutting prematurely and striking customers. In seeking judgment n.o.v., Appellants first rely upon their own testimony as to a purported admission from Mr. Struebel. Appellants' brief at 12 ("William Vitez testified at trial that the store manager, Thomas Struebel, admitted that there had been problems with the door prior to the incident in question, but he had not had a chance to put up a warning sign. Dawn Vitez, likewise, testified to the same admission by Mr. Struebel.").

Appellants' reliance upon their own testimony is misguided. Pursuant to the standard of review in the judgment n.o.v. context, we view the evidence in the light most favorable to the verdict winner, and we do not

- 8 -

overturn the credibility determinations of the factfinder. By its verdict, the jury found this testimony by Mr. and Mrs. Vitez incredible, and we likewise must discount it. Additionally, Appellees adduced proof that the doors were functioning properly before and after 3:00 p.m. on March 9, 2009, which we must credit.

Appellants suggest that "Mr. Struebel at no time either in his discovery deposition or in the trial testimony, denied making the statements in question." *Id*. This suggestion is a mischaracterization of Mr. Struebel's testimony, which was that there had been no problems with the door from January 2008 to March 2008. He also said that he did not ask a maintenance company to look at the door after March 9, 2008, because he operated the door after Mr. Vitez said that it closed on him. The door was working properly, as it had in the past. Appellants read excerpts from a deposition that Mr. Struebel gave prior to his videotaped deposition. In the previous deposition, Mr. Struebel stated that he did not remember making any of the statements attributed to him by Appellants.

Since Mr. Struebel testified that the door did not malfunction before the incident in question, he would not have apologized to Appellants, would not have said that there was trouble with the door prior to March 9, 2008, and would not have said that he meant to place warning signs at the entrance. Mr. Struebel's testimony unquestionably constituted a denial that he admitted to Appellants that the door was not functioning properly just

prior to March 9, 2008. We therefore reject Appellants' request for judgment n.o.v.

Appellants' second and third contentions relate to the doctrine of spoliation. They fault the trial court with refusing to sanction Appellees under that doctrine since the doors that purportedly malfunctioned were replaced. Appellants, in their second issue, contend that an appropriate sanction in this case was entry of judgment as to liability in their favor. In their third allegation raised on appeal, they suggest that, in the alternative, the jury should have been given the spoliation charge.

As we observed in **Creazzo v. Medtronic, Inc.**, 903 A.2d 24, 28 (Pa.Super. 2006) (quoting **Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division**, 781 A.2d 1263, 1269 (Pa.Super. 2001)), "When reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion." Both the decision to sanction a party for destroying evidence as well as the type of sanction imposed is within the trial court's discretion. **Creazzo**, **supra**.

Spoliation sanctions are imposed due to the "the common sense observation that a party who has notice that evidence is relevant to litigation and who proceeds to destroy evidence is more likely to have been threatened by that evidence than is a party in the same position who does not destroy the evidence." **Id**. at 29 (quoting **Mount Olivet**, 781 A.2d at 1269). One remedy for the destruction of evidence within a party's control

is to instruct the jury that an adverse inference may be drawn against the party. ***Creazzo***, ***supra***. At the other end of the spectrum, the trial court may impose liability against that party. ***Id***.

When determining whether to sanction a party for spoliation as well as the nature of the sanction to impose, the trial court must consider three factors:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

***Creazzo, supra*** at 29 (quoting ***Mount Olivet***, 781 A.2d at 1269–70). The "evaluation of the first prong, 'the fault of the party who altered or destroyed the evidence,' requires consideration of two components, the extent of the offending party's duty or responsibility to preserve the relevant evidence, and the presence or absence of bad faith." ***Creazzo, supra*** at 29 The duty of the offending party to preserve the evidence is established when that party knows that litigation is pending or likely and that it is foreseeable that destruction of the evidence would prejudice the other party. ***Id***.

Herein, the evidence as to spoliation was as follows. In July, 2011, three years and four months after the accident, the T.J. Maxx store in question was renovated. As part of those renovations, the doors that allegedly closed on Mr. Vitez were replaced. Appellants' lawyer, Karl R.

Hildebrand, Esquire, filed an affidavit indicating that he verbally discussed examining the accident scene with Appellees' counsel in June, 2011, fifteen months after this case was filed. Appellants did not formally ask to examine the doors until December 16, 2011, twenty-one months after this action was instituted, and five months after the renovation work, when they disseminated a letter demanding an inspection.

We conclude that the trial court did not abuse its discretion in refusing to sanction Appellees under the facts at bar. It found both that Appellees bore no fault in the removal of the door and that Appellants suffered no prejudice due to their inability to inspect it. We concur with both findings.

Appellees did not intentionally destroy the automatic doors to prevent Appellants from inspecting them; rather, they were replaced as part of a renovation project that occurred more than three years after the March 9, 2008 incident and sixteen months after this lawsuit was filed. Appellants waited fifteen months after filing this case to informally discuss an inspection with Appellees' counsel, who would have no apparent reason to know about corporate plans to renovate the store. Appellants did not set a date for the inspection, which could have occurred in the month between the alleged June 2011 conversation and the July 2011 renovation.

Appellants' written request to inspect the doors was made five months after the renovations, and twenty-one months after the action was instituted. Under the circumstances, Appellees had no reason to believe that

Appellants sincerely wanted to examine the doors when they decided to renovate their store.

Fifteen months after this action was instituted, they determined that the need to examine the property was so imperative that liability based on spoliation should be imposed on Appellees. Conveniently, that demand was sent after the doors were removed. If the necessity for an examination of the accident scene was so compelling, Appellants should have made their request in a timely manner. Since twenty-one months had passed from the filing of this litigation before Appellants sent a written request to examine the doors, Appellees bore no fault for purposes of spoliation when they decided to go forward with renovations.

Additionally, Appellants were not prejudiced by their inability to inspect the doors in December 2011, which was more than three and one-half years after the accident occurred. The spoliation involved in this case does not pertain to the destruction of a static object that malfunctioned, such as a car. Rather, the product was in continual use after March 9, 2008. As of December 16, 2011, when the inspection demand was made, the automatic doors would not have been in the same condition as they were in when Mr. Vitez was supposedly injured by them. Inspection is a non-issue in this case because it would have been of no value.

Specifically, this action was not a products liability case against the manufacturer or distributor of a purportedly defective product. In such a

- 13 -

case, a plaintiff normally must have access to the product to prove that it was defective. In the present matter, the issues at trial were whether the door had closed prematurely on customers before the March 9, 2008 incident and whether Appellees had notice that it had done so. An inspection conducted in December 2011 would not have established either of those critical issues. Appellants have advanced concepts pertinent to malfunctioning products and attempted to engraft them in this premises liability case.

As the trial court noted, Appellants had the maintenance records for the door in question so that they could establish the existence of any malfunction and notice thereof prior to March 9, 2008. They also presented expert testimony as to Appellees' duty to inspect and maintain the door, as was pertinent to whether Appellees should have known the door was faulty. Hence, we conclude that the trial court did not abuse its discretion in refusing to sanction Appellees to any extent under the doctrine of spoliation, and we therefore reject Appellants' second and third claims.

Appellants' fourth complaint is that the trial court erred in refusing to instruct on the doctrine of *res ipsa loquitur*. Our standard of review in this context is as follows:

> Our standard of review when considering the adequacy of jury instructions in a civil case is to "determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case." **Stewart v. Motts**, 539 Pa. 596, 654 A.2d 535 (1995). It is only when "the charge as a

whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue" that error in a charge will be found to be a sufficient basis for the award of a new trial. *Id.* at 540; *Ferrer v. Trustees of University of Pennsylvania*, 573 Pa. 310, 345, 825 A.2d 591, 612 (2002); *see also Tindall v. Friedman*, 970 A.2d 1159, 1175 (Pa.Super. 2009).

*Pringle v. Rapaport*, 2009 PA Super 171, ¶ 12, 980 A.2d 159, 165 (Pa.Super. 2009) (*en banc*). We outline the parameters of the *res ipsa loquitur* doctrine:

> *Res ipsa loquitur* allows juries to infer negligence from the circumstances surrounding the injury. *Res ipsa loquitur,* meaning literally "the thing speaks for itself," is "a shorthand expression for circumstantial proof of negligence – a rule of evidence." *Gilbert v. Korvette, Inc.,* 457 Pa. 602, 327 A.2d 94, 99 (1974). It is a rule that provides that a plaintiff may satisfy his burden of producing evidence of a defendant's negligence by proving that he has been injured by a casualty of a sort that normally would not have occurred in the absence of the defendant's negligence. William L. Prosser, Law of Torts §§ 39, 40 (4th ed. 1971) (calling *res ipsa loquitur* a "simple matter of circumstantial evidence"). As noted, the Restatement (Second) of Torts § 328D formulates the evidentiary theory of *res ipsa loquitur* as follows:
>
>> (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when
>>
>>> (a) the event is of a kind which ordinarily does not occur in the absence of negligence;
>>>
>>> (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and

> (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.
>
> (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
>
> (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.

*Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1071 (Pa. 2006).

The trial court refused to instruct the jury on this doctrine since, in order to establish liability, Appellants had to prove that Appellees had knowledge or should have had knowledge of a defect prior to the incident, which they failed to do. Moreover, as the event in question could have occurred in the absence of negligence on the part of Appellees, the charge was inapplicable herein. We concur with this analysis.

We observe the following. Whether the door actually struck Mr. Vitez was not an uncontested fact in this case. Appellants were the only eyewitnesses to this event. Mr. Struebel merely saw spilled coffee on the door. Of significance is the fact that Mr. Struebel also said that the doors were functioning properly both before and after they purportedly closed on Mr. Vitez. Since the happening of the incident at issue was not conceded, the charge in question was inappropriate for that additional reason.

Appellants' fifth and sixth allegations concern certain restrictions that the trial court placed on the ability of their expert witness, Len McCuen, to testify at trial.

> The admission of evidence, including expert scientific testimony, is within the purview of the trial court's discretion. . . . [T]he decision to admit or to exclude evidence, including expert testimony, lies within the sound discretion of the trial court. Generally, we review a trial court's evidentiary rulings for abuse of discretion. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***A.J.B. v. M.P.B.***, 945 A.2d 744, 749 (Pa.Super. 2008) (citations omitted).

Initially, we note the following. The trial court did permit Mr. McCuen to opine that the manufacturer's specifications for the door in question recommended that Appellees perform regular maintenance on the door and that Appellees' service records established that they were not performing that maintenance. N.T. Trial, 8/10/15, at 121-22. He was also allowed to state that certain safety features built into the door were not functioning properly when the incident occurred. His testimony was that automatic doors do not normally hit a person passing through them

> because there's a fail-safe system. Whether it's a power assist, fully automatic, sliding, swinging, it doesn't matter. All these doors have a backup sensor system and they have a safety zone for a swinging door that would be the area of that you get swatted by a door. There's many different kinds of sensors. We don't know what kind of sensor it had but looking at literature and so forth **it was likely infrared scanner** above the door and based on the behavior, **it had to have failed**. Regardless of

- 17 -

whether or not it was power or they were linked or not linked, regardless of quite a number of things of why the door was even open kind of doesn't matter because **we know that failed**. **But then also the backup safety zone sensor had to have failed or otherwise it wouldn't have closed in on him the way it did**.

*Id*. at 121 (emphases added).

However, Mr. McCuen was directed not to discuss problems that Appellees encountered with doors in the store that did not strike Mr. Vitez. This ruling was proper since the only door relevant to this matter was the one that hit Mr. Vitez. Evidence that "is not relevant is not admissible." Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. The issue at trial was whether the door that allegedly struck Mr. Vitez was malfunctioning before March 9, 2008. Hence, issues concerning any other doors at the store were not pertinent at trial, and the trial court did not abuse its discretion in its ruling in this respect.

In addition, Mr. McCuen was not allowed to reveal to the jury that there was a problem with the door just prior to the March 8, 2009 incident and that Appellees should have known about the problem. This ruling was premised upon the fact that the service records for the door refuted that opinion. Specifically, Appellees' records established two service calls pertaining to the door at issue prior to March 9, 2008. One, made on

December 5, 2005, involved the door closing prematurely and striking people's heels and behinds. The other one pertained to a malfunctioning button, which did not involve a problem similar to the one herein.

Since the December 5, 2005 service call occurred two years and three months prior to the present incident, the trial court concluded that Mr. McCuen would be required to speculate that there had been problems with the door in question closing too quickly just prior to Mr. Vitez's experience. The law provides that

> expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

*Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 849 (Pa.Super. 2012).

In this case, the service records, as well as Mr. Struebel's testimony, indicated that there had not been problems with the door shutting prematurely in the months preceding March 9, 2008. Appellants had no proof upon which Mr. McCuen could base an opinion to the contrary. Hence, any testimony to the effect that the door was closing prematurely just prior to the incident and that Appellees should have known about it would have been pure speculation. The trial court properly restricted Mr. McCuen's testimony in this respect.

Appellants' eighth issue is that the trial court erred in limiting their cross-examination of Mr. Struebel and not permitting them to question him about "the full service history on all the entrance and exit doors." Appellant's brief at 26. As outlined, *supra*, the service calls on doors that did not strike Mr. Vitez were not relevant. Hence, the questioning was properly disallowed.

Next, Appellants complain that the trial court incorrectly curtailed their closing argument that would have suggested to the jury that the doors were replaced because they were defective. Specifically, in closing remarks, Appellants' counsel noted that "the doors were replaced. I would submit to you, ladies and gentlemen, it's reasonable to infer that you don't replace doors in front of a store –." N.T. Trial, 8/12/15, at 14. Appellees' objection to continuation of this line of thought was sustained. Counsel's remarks were clearly going to ask the jury to make the inference that the doors were replaced because they were defective or malfunctioning. The trial court sustained the objection because the doors were not replaced on that basis but for cosmetic reasons during a renovation that occurred years after the March 9, 2008 incident.

Appellants maintain on appeal that Appellees acknowledged that the doors were removed and that they were permitted to argue all inferences from the evidence. The flaw in this position is that the inference that Appellants sought to make was an improper one under Pa.R.E. 407, which

- 20 -

provides, "When measures are taken by a party that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible against that party to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Appellants' argument on appeal fails for an additional reason. The inference that Appellants were asking the jury to make was factually erroneous. The doors were removed as part of renovations, not because they were malfunctioning.

Appellants' final position is that the trial court "erred in permitting the Defendant to have a second defense medical expert examination of the Plaintiff." Appellants' brief at 28. Pa.R.C.P. 4010(a) states,

> (2) When the mental or physical condition of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by an examiner or to produce for examination the person in the party's custody or legal control.
>
> (3) The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

The determination of whether there was good cause for a medical examination is committed to the discretion of the trial court. *McGratton v. Burke*, 674 A.2d 1095, 1096 (Pa.Super. 1996). When this action was first instituted, Appellees were given an expert report linking injuries to Mr.

Vitez's arm and hand to the March 9, 2008 incident, and Appellees obtained a medical examination of those areas. Appellants then gave Appellees a second expert report, which stated for the first time that Mr. Vitez's rotator cuff injury was exacerbated when the door closed on him. The trial court therefore permitted Appellees to obtain a medical examination of that area. In light of these facts, there was no abuse of discretion in permitting the second examination. Moreover, this contention relates to the question of damages, which the jury never examined since it found that Appellees were not negligent. Hence, any error in this respect was not harmful to Appellants.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/14/2016