Barbara McPHEE and Robert McPhee, her husband, Plaintiffs,

v.

DePUY ORTHOPEDICS, INC., Defendant.

Civil Action No. 3:11–CV–287.

United States District Court, W.D. Pennsylvania.

Sept. 28, 2012.

Philip A. Fabiano, Howard Messer & Associates, Pittsburgh, PA, for Plaintiff.

C. James Zeszutek, Randal M. Whitlatch, Dinsmore & Shohl, Pittsburgh, PA, Jan M. Carroll, Barnes & Thornburg LLP, Indianapolis, IN, for Defendant.

## MEMORANDUM AND ORDER OF COURT

KIM R. GIBSON, District Judge.

## I. SYNOPSIS

This matter comes before the Court on Defendants DePuy, DePuy Orthopedics, Inc., and Johnson & Johnson's "Motion to Dismiss" (Doc. No. 11). Defendants moved to dismiss the instant action under Federal Rule of Civil Procedure 12(b)(2) and (6). Pursuant to the agreement of the parties to dismiss all claims against DePuy and Johnson & Johnson, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is now moot. Defendant DePuy Othopedics Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiff opposes, remains before the Court. For the reasons that follow, the Motion is **GRANTED**.

## II. JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Venue is proper pursuant to 28 U.S.C. § 1441(a).[1]

---

1. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this district.

## III. BACKGROUND [2]

This case stems from the implantation of medical devices,[3] specifically a Duraloc Sector Cup, an Enduron Polyethylene liner,[4] an AML Hip System MMA 1557–02–000, and a Depuy Articul/EZE Ball 1365–11–00, S1LBE1014 (hereinafter collectively referred to as the "device"), in Plaintiff Barbara McPhee (hereinafter "Plaintiff-wife"). (See Doc. No. 1–2 at 1–2.) The device was surgically implanted in Plaintiff-wife in 1999 during a procedure performed at Altoona Hospital, Blair County, Pennsylvania. (See Doc. No. 1–2 at 3, 17.) Although unclear from the face of Plaintiffs Complaint, it appears that the device was implanted in connection with a total hip replacement surgery.[5] (See Doc. No. 12 at 2.) In November 2008, Plaintiff-wife experienced pain while walking in her home. (See Doc. No. 1–2 at 3.) Immediately thereafter, Plaintiff-wife visited a physician, Robert Singh, M.D., who informed Plaintiff-wife that the shaft of the implant had shattered. (See Doc. No. 1–2 at 4.) Plaintiff-wife underwent revision surgery on or about June 15, 2009, during which the broken device was removed and replaced with a new device. (See Doc. No.

1–2 at 4.) Since the reversion surgery, Plaintiff-wife suffers from progressively worsening, severe and debilitating pain. (See Doc. No. 1–2 at 4.)

Plaintiffs commenced the instant action in the Court of Common Pleas of Blair County, Pennsylvania to recover damages from DePuy, DePuy Orthopedics, Inc., and Johnson & Johnson. (See Doc. No. 1.) Defendants removed the case to this Court on December 19, 2011. (Doc. No. 1.) On January 23, 2012, Defendants filed the instant Motion to Dismiss (Doc. No. 11), accompanied by a Brief in Support of Motion to Dismiss (Doc. No. 12), and a Verified Declaration of Lacey P. Elberg (Doc. No. 13). On February 15, 2012, Plaintiffs filed a response to Defendants' Motion to Dismiss (Doc. No. 15), accompanied by Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss (hereinafter "Plaintiffs' Brief in Opposition") (Doc. No. 16). Defendants were granted leave to file a reply brief to Plaintiffs' Brief in Opposition, and Defendant DePuy Orthopedics, Inc. filed a Reply Brief in Support of Defendant's Motion to Dismiss (hereinafter "Sur–Reply Brief") (Doc. No. 29) on March 13, 2012.

---

**2.** In light of the procedural posture of this case, the Court accepts as true the factual allegations of Plaintiffs' Complaint. See infra, Part IV.

**3.** From the face of Plaintiffs' Complaint, it is unclear whether the materials implanted in Ms. McPhee consist of one or several devices. (See Doc. No. 1–2 at 2 (referring to the device(s) as "the implant or combination of devices involved.")) In its Motion to Dismiss, Defendant references the materials implanted in Ms. McPhee as component medical devices. (See Doc. No. 12 at 2.) The Court finds it unnecessary to decide this issue, as Plaintiff states that "the implant or combination of devices," which Plaintiffs collectively refer to as "the product/device," "is classified as medical devices [sic]." (See Doc. No. 1–2 at 3.) Therefore, for the purposes of this Memoran-

dum, the Court will refer to the device(s) in the singular, as Plaintiffs do in their Complaint.

**4.** Plaintiffs' Complaint identifies this device as "Enduron Polyethylene 1241–50–025, SS71CJ1051." Defendant refers to this device as "an Enduron polyethylene liner." Although the Court accepts as true the allegations asserted in Plaintiffs' Complaint, the Court refers to this item as a liner solely to provide context. The precise labeling of this device has no bearing on the disposition of this case.

**5.** Again, for the sole limited purpose of providing context to the events alleged by Plaintiff, the Court refers here to a fact alleged in Defendant's Motion to Dismiss. This fact has no bearing on the disposition of the case.

Plaintiffs' Complaint contains six counts against Defendants DePuy, DePuy Orthopedics, Inc., and Johnson & Johnson. (*See* Doc. No. 1–2.) Pursuant to the stipulation of the parties, this Court dismissed this action with prejudice as to Defendants DePuy and Johnson & Johnson on February 23, 2012, leaving DePuy Orthopedics, Inc. as the sole defendant (hereinafter "Defendant"). (Doc. No. 22.) In Counts II and IV of their Complaint, Plaintiffs assert claims solely against DePuy and Johnsons & Johnson, respectively. (*See* Doc. No. 1–2 at 8–10, 14–16.) In light of the dismissal as to these Defendants, Counts II and IV are moot. In Counts I, III, V, and VI, Plaintiffs assert claims against Defendant on the theories of strict liability, negligence, breach of express and implied warranties, and loss of consortium. (*See* Doc. No. 1–2 at 5–8, 11–13, 16–19.) In Defendants' initial Motion to Dismiss, Defendants requested that this Court dismiss the action for lack of personal jurisdiction over DePuy and Johnson & Johnson and for Plaintiffs' failure to state a claim. (Doc. No. 11.) Pursuant to the dismissal of the action as to Defendants DePuy and Johnson & Johnson, Defendants' motion with respect to Defendants DePuy and Johnson & Johnson is moot. The Court now addresses the request of the sole remaining Defendant, DePuy Orthopedics, Inc., that the Court dismiss the remaining counts of the Complaint—Counts I, III, V, and VI—for failure to state a claim.

## IV. STANDARD OF REVIEW

Defendant moves to dismiss the pending claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Rule 12(b)(6) must be balanced with the requirements of Rule 8, which governs general pleading matters and provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8.

While the decisions of the United States Supreme Court in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), represented a significant change in federal pleading standards, the United States Court of Appeals for the Third Circuit has provided clear guidance to the district courts. To wit:

> after *Iqbal,* when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." 129 S.Ct. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 129 S.Ct. at 1950. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009). In short, a district court reviewing a motion to dismiss for failure to state a claim must "accept all factual allegations as true, construe the

complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* at 210 (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)). However, "legal conclusions" and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" as bona fide factual material. *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

## V. DISCUSSION

Defendant raises several arguments in support of its Motion to Dismiss. Specifically, Defendant contends that (1) Counts I, III, V and VI are preempted by federal law under the Medical Device Amendments to the Food, Drug and Cosmetic Act, 21 U.S.C. § 360c *et seq.*, (2) Count I and Plaintiffs' claim for breach of implied warranties of merchantability and fitness for a particular purpose contained in Count V are barred by Pennsylvania law,[6] (3) Count V is barred by Pennsylvania's statute of limitations,[7] and (4) Plaintiff's breach of express warranties claim contained in Count V fails to state a plausible claim for breach of express warranties under Pennsylvania law. (*See* Doc. No. 11; Doc. No. 29.) The Court will now address these arguments in order of the Counts to which they relate, beginning with Counts I and III, followed by Count V, and concluding with Count VI.

### A. Strict Liability (Count I) and Negligence (Count III)

In Count I of their Complaint, Plaintiffs assert strict liability claims for manufacturing, design, and marketing (failure to warn) defects. (*See* Doc. No. 1–2 at 5–8.) In Count III, Plaintiffs assert a negligence claim against Defendant. (*See* Doc. No. 1–2 at 11–13.) Defendant alleges that both the strict liability and negligence claims are expressly preempted by the Medical Device Amendments (hereinafter "MDA") to the Food, Drug and Cosmetic Act. (Doc. No. 12 at 8–9; Doc. No. 29 at 1–3.)

The MDA established a regime of pre-market approval for new devices classified by the Food and Drug Administration (hereinafter "FDA") as Class III devices.[8]

---

**6.** There is no dispute that Pennsylvania law governs this action.

**7.** In the Motion to Dismiss, Defendant contended that Counts I and II were barred by Pennsylvania's two-year statute of limitations for tort claims. (*See* Doc. No. 11 at 2.) In its Sur–Reply Brief, Defendant amended this position, stating that "DePuy Orthopedics will concede that dismissal of claims governed by the two-year statute is not appropriate at this time." (Doc. No. 19 at 6–7.) In response to Plaintiffs' assertion in Plaintiffs' Brief in Opposition that the statute of limitations had not run for the express warranty claim (*see* Doc. No. 16 at 13), Defendant, in its Sur–Reply Brief, raised the argument that Plaintiffs' warranty claims are barred by Pennsylvania's statute of limitations (see Doc. No. 29 at 6–8). Because omitting a statute of limitations defense from a motion to dismiss does not necessarily waive the defense, *see Robinson v. Johnson*, 313 F.3d 128, 134–39 (3d Cir.2002),

this defense was raised early in the proceedings, and the Court finding that Defendant's failure to raise it earlier does not result in prejudice to Plaintiffs, the Court will address Defendant's claim that Count V is barred by Pennsylvania's statute of limitations.

**8.** Class III medical devices are devices which cannot be classified as Class I or Class II devices and are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health, or ... [present] a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C). Only Class III devices are subject to premarket approval. *See* § 360c(a). While Plaintiff does not specifically state that the device at issue here is a Class III device, Plaintiff avers the device was approved pursuant to the premarket approval process. (*See* Doc. 1–2 at 3.)

*Riegel v. Medtronic, Inc.*, 552 U.S. 312, 317–18, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). Premarket approval is a rigorous process. *Id.* Manufacturers of Class III devices must submit what is typically a multi-volume application that includes, among other information, extensive reports of medical and clinical data and the device's proposed labeling. *Id., Williams v. Cyberonics, Inc.*, 654 F.Supp.2d 301, 304 (E.D.Pa.2009). The FDA then spends an average of 1,200 hours reviewing each application, during which time the FDA may refer the application to a panel of outside experts or request additional data from the manufacturer. *Riegel*, 552 U.S. at 317–18, 128 S.Ct. 999 (citing § 360e(c)(1)(G); *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996); 21 C.F.R. § 814.44(a) (2007)). Once a device receives premarket approval, "the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319, 128 S.Ct. 999 (citing § 360e(d)(6)(A)(i)). Any such proposed changes must be submitted to the FDA for approval. *Id.* (citing § 360e(d)(6); 21 C.F.R. § 814.39(c)). Devices approved pursuant to the PMA process are also subject to reporting requirements. *Id.* (citing § 360i). Even after a device receives premarket approval, the FDA may, and under some circumstances, must, revoke premarket approval based on data or information received from such reports or otherwise made known to the FDA. *Id.* at 319–20, 128 S.Ct. 999.

■ The MDA contains an express preemption provision. *See* § 360k(a), *Riegel*, 552 U.S. at 321, 128 S.Ct. 999. The provision states:

> Except as provided in subsection (b), no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this Act to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a). Thus, a state law claim is preempted by the MDA if (1) the Federal Government has established requirements applicable to the device at issue and (2) Plaintiffs' "common-law claims are based upon [state] ... requirements with respect to the device that are 'different from or in addition to,' the federal ones, and that relate to safety and effectiveness." *Riegel*, 552 U.S. at 321–22, 128 S.Ct. 999. Premarket approval imposes "requirements" under the MDA. *Riegel*, 552 U.S. at 322–23, 128 S.Ct. 999.

Plaintiffs aver in their Complaint that the device at issue in this case is classified as a medical device. (Doc. No. 1–2 at 3.) Plaintiffs further aver that the device was approved by the FDA through the premarket approval process (hereinafter "PMA"), and is subject to post-approval reporting requirements. (Doc. No. 1–2 at 3.) Accepting these factual allegations as true, the federal government established requirements applicable to the device at issue through the PMA process to which the device was subject. Therefore, the first prong of the test for express preemption is satisfied. Like in *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), here, safety and effectiveness are the very subjects of Plaintiffs' strict liability and negligence claims. *See Riegel*, 552 U.S. at 323, 128 S.Ct. 999 (stating that "[s]afety and effectiveness are the very subjects of the Rie-

gels' common-law claims," when the claims at issue consisted of strict liability, breach of implied warranty, and negligence claims). Therefore, Plaintiffs' claims in Counts I and III are preempted if they are based on state requirements that are "different from or in addition to" the federal requirements established by the FDA through the MDA. § 360k(a). *See Riegel,* 552 U.S. at 323, 128 S.Ct. 999.

■ In *Riegel,* the Supreme Court held that common-law duties are state "requirements." *Riegel,* 552 U.S. at 323–24, 128 S.Ct. 999. When success on state law claims would require Plaintiffs to show that the device "was unsafe or ineffective despite the PMA process," such claims "interfer[e] with the requirements already established by the MDA," and are therefore preempted. *Williams v. Cyberonics, Inc.,* 388 Fed.Appx. 169, 171 (3d Cir.2010). *See also Riegel,* 552 U.S. at 325, 128 S.Ct. 999 (state law that requires a manufacturer's device "to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme"). However, the preemption provision of the MDA bars claims premised on state common-law requirements only to the extent that the claims rely on common-law duties that differ from or add to FDA requirements. *See* § 360k(a); *Riegel,* 552 U.S. at 330, 128 S.Ct. 999. Section 360k "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations[.]" *Id.* In such a case, "the state duties ... 'parallel,' rather than add to, federal requirements." *Id.* Therefore, Plaintiffs' claims can survive if Plaintiffs allege that Defendant violated federal law in a way that parallels a state duty. *Gross v. Stryker Corp.,* 858 F.Supp.2d 466, 491 (W.D.Pa.2012). Here, such a claim would amount to an allegation that the medical device did not adhere to the FDA-approved standards or regulations. *See*

*Riegel,* 552 U.S. at 330, 128 S.Ct. 999; *Gross,* 858 F.Supp.2d at 491–92; *Cyberonics,* 654 F.Supp.2d at 306–07.

■ In the instant case, Plaintiffs fail to assert such a parallel claim. To adequately plead a parallel claim, "Plaintiffs cannot simply incant the magic words '[Defendant] violated FDA regulations' in order to avoid preemption." *Id. Gross,* 858 F.Supp.2d at 493 (quoting *In re Medtronic Inc.,* 592 F.Supp.2d 1147, 1158 (D.Minn. 2009)). "To properly allege parallel claims, the complaint must set forth facts showing 'action or inaction in [defendants'] efforts to take part in the PMA process or implement its results.'" *Id.* at 492 (quoting *Parker v. Stryker Corp.,* 584 F.Supp.2d 1298, 1301 (D.Colo.2008)). Plaintiffs' strict liability and negligence claims are premised on the assertion that Defendant placed the device in the stream of commerce in a defective and dangerous condition, without adequate warnings and instructions. (*See* Doc. No. 1–2 at 5–8, 11–13.) Generalized common law theories of liability, such as these, differ from or add to federal requirements, *see Riegel,* 552 U.S. at 325, 128 S.Ct. 999, and "are precisely the type of claims the MDA sought to preempt." *Cyberonics,* 388 Fed.Appx. at 171.

The Court finds only three clauses in Plaintiffs' Complaint that could possibly be read to assert a parallel claim. In their strict liability claim, Plaintiffs' assert that the damages sustained by Plaintiff-wife are a result of "misrepresentations by defendants of material facts concerning the character or quality of the subject product." (Doc. No. 1–2 at 6.) In their negligence claim, Plaintiffs' assert that Defendant suppressed "the dissemination of medical and scientific information relating to the harmful effects of the device/product" and failed to follow and violated "laws, safety codes and regulations, governmental

or injury standards applicable" to the device and its warning and labeling. (Doc. No. 1–2 at 12.) From the face of these assertions, it is unclear to whom such misrepresentations were made or from whom such information was withheld. Even construing these assertions generously, however, and reading them as assertions that the Defendant misrepresented facts to and suppressed information from the FDA, Plaintiffs fail to set forth any *facts* showing action or inaction in the Defendant's efforts to take part in the PMA process. Further, with respect to Plaintiffs' claim that Defendant violated applicable laws, codes, and regulations, Plaintiffs' fail to specify which laws, codes or regulations Defendant allegedly violated. From the text of the Complaint, it is a stretch to conclude that Plaintiffs aver that Defendant violated FDA regulations. However, even making this stretch, Plaintiffs' averment merely amounts to an incantation that "Defendant violated FDA regulations," which is insufficient to avoid preemption. *See Gross,* 858 F.Supp.2d at 492–93. Therefore, the Court finds that Plaintiffs fail to assert a parallel claim and that Plaintiffs' strict liability and negligence claims, as presently pled, are preempted and subject to dismissal for failure to state a claim.

█ "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir.2008). Although Plaintiffs' claims, as presently pled, are preempted, should Plaintiffs plead their claims with sufficient specificity in a manner that parallels federal law, Plain-

tiffs could theoretically assert viable claims for relief.[9] Therefore, amendment is not *per se* futile. Defendant, however, also asserts that Plaintiffs' strict liability claim (Count I) should be dismissed for failure to state a claim because it is barred by Pennsylvania law interpreting Comment k to the Restatement (Second) of Torts, § 402A. (*See* Doc. No. 12 at 10–12.) Plaintiffs point out that although Section 402A has been interpreted by the Supreme Court of Pennsylvania to bar strict liability claims against prescription drug manufacturers, the Supreme Court of Pennsylvania has not extended this holding to claims against medical device manufacturers. (*See* Doc. No. 16 at 2.) Plaintiffs further argue that even if this holding is extended to medical device manufacturers, the actual language of Comment k does not establish an absolute bar to liability. (*See* Doc. No. 16 at 4.) In support of this claim, Plaintiffs cite caselaw illustrating that other jurisdictions recognize a caveat in Comment k and do not interpret Comment k as an absolute bar to strict liability. (*See* Doc. No. 16 at 4.)

Comment k to Section 402A, titled "Unavoidably unsafe products" states as follows:

> There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold

9. As explained in the following discussion, because the Court finds that Plaintiffs' strict liability claim is precluded by Pennsylvania law, the Court does not address whether a

common-law strict liability claim could be pled in a way such that it asserts a parallel violation of federal law.

except to physicians, or under the prescription of a physician. . . . The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk. As Plaintiffs point out, the Supreme Court of Pennsylvania has interpreted Comment k of Section 402A to bar strict liability claims against prescription drug manufacturers. *Hahn v. Richter*, 543 Pa. 558, 673 A.2d 888, 891 (1996) ("[W]here the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to

warn of dangers, i.e., the manufacturer's negligence, is the only recognized basis of liability.").[10] While the Supreme Court of Pennsylvania has not ruled on *Hahn's* applicability to medical device manufacturers, the Pennsylvania Superior Court and district courts applying Pennsylvania law have extended the *Hahn* decision to include medical device manufacturers. *See Creazzo v. Medtronic, Inc.*, 903 A.2d 24, 31 (Pa.Super.Ct.2006) ("We find no reason why the same rationale applicable to prescription drugs may not be applied to medical devices."); *see, e.g., Parkinson v. Guidant Corp.*, 315 F.Supp.2d 741, 746–48 (W.D.Pa.2004) (predicting that the Supreme Court of Pennsylvania would find that § 402A applies equally to prescription medical devices, collecting cases from the Eastern District of Pennsylvania predicting the same); *Horsmon v. Zimmer Hold-*

---

**10.** While the Court recognizes that the language of *Hahn* addresses failure to warn strict liability claims, *Hahn* has largely been read to hold that strict liability does not apply to prescription drugs in any way. *See, e.g., Parkinson v. Guidant Corp.*, 315 F.Supp.2d 741, 748 n. 6 (W.D.Pa.2004); *Horsmon v. Zimmer Holdings*, No. 11–1050, 2012 WL 423434, at *2, 2012 U.S. Dist. LEXIS 15650, at *6 (W.D.Pa. Feb. 8, 2012) ("Other courts have interpreted Hahn as imposing an absolute bar to strict liability claims. . . ."); *Soufflas v. Zimmer, Inc.*, 474 F.Supp.2d 737, 749 (E.D.Pa.2007) (granting summary judgment for Defendant in a medical device case on Plaintiff's strict liability claims for design, manufacturing and failure to warn defects because "[u]nder Pennsylvania law . . . strict liability and § 402A are inapplicable to prescription drugs."); *Esposito v. I–Flow Corp.*, No. 10–cv–3883, 2011 WL 5041374, at *4–5, 2011 U.S. Dist. LEXIS 122570, at *13–14 (E.D.Pa. Oct. 18, 2011); *Leonard v. Taro Pharms. USA, Inc.*, No. 10cv1341, 2010 WL 4961647, at *5, 2010 U.S. Dist. LEXIS 127892, at *12 (W.D.Pa. Dec. 2, 2010) ("Pennsylvania state and federal courts have interpreted Hahn broadly to bar all non-negligence based claims asserted against a manufacturer of prescription drugs.") The Court notes that recently, a few courts have found

that strict liability claims premised on a manufacturing defect theory are not precluded under Pennsylvania law. *See Doughtery v. C.R. Bard, Inc.*, No. 11–6048, 2012 WL 2940727, at *2–6, 2012 U.S. Dist. LEXIS 100374, at *5–25 (E.D.Pa. July 18, 2012); *Schiff v. Hurwitz*, No. 12–0264, 2012 WL 1828035, at *5, 2012 U.S. Dist. LEXIS 70039, at *14–15 (W.D.Pa. May 18, 2012); *Lance v. Wyeth*, 4 A.3d 160, 164–65 (Pa.Super.Ct.2010). Unlike here, however, where federal preemption provides an additional ground for dismissal, the courts in those cases either did not also address the issue of preemption pursuant to the MDA, *see Doughtery*, 2012 WL 2940727, 2012 U.S. Dist. LEXIS 100374; *Lance*, 4 A.3d at 160, or found the claims were not preempted by the MDA, *see Schiff*, 2012 WL 1828035, at *4–5, 2012 U.S. Dist. LEXIS 70039, at *12–15. In light of this, and Plaintiffs' apparent concession that Pennsylvania law bars strict liability claims in their entirety with respect to drug manufacturers (see Doc. No. 16 at 3 ("The Pennsylvania Supreme Court interpreted the language in Comment k to preclude plaintiffs from bringing strict liability claims against drug manufacturers.")), the Court follows the majority approach and finds that *Hahn* extends to strict liability claims premised on all three

*ings,* No. 11–1050, 2011 WL 5509420, at *2, 2011 U.S. Dist. LEXIS 130415, at *5–6 (W.D.Pa. Nov. 10, 2011) (collecting cases). While the Court acknowledges that these cases are not controlling, this Court is persuaded by the analysis of the Pennsylvania Superior Court and agrees with the prediction of our sister courts in this Circuit that the Supreme Court of Pennsylvania would extend this holding to medical device manufacturers upon consideration of the issue. Therefore, this Court finds that Pennsylvania law bars Plaintiffs' strict liability claims against Defendant.

Plaintiffs' second argument, that the actual language of Comment k, specifically the phrase "properly prepared, and accompanied by proper directions and warning" [11] does not establish an absolute bar to liability in this case, has recently been addressed by another Court in this district. In *Horsmon v. Zimmer Holdings,* No. 11–1050, 2012 WL 423434, 2012 U.S. Dist. LEXIS 15650 (W.D.Pa. Feb. 8, 2012), Plaintiff sued the corporation that designed, manufactured, and sold the devices used to replace her right hip joint following a total hip replacement on five theories: negligence, strict liability, breach of implied warranties, breach of express warranties, and loss of consortium. Like Plaintiffs here, the Plaintiff in *Horsmon,* relying on caselaw from other jurisdictions, argued that this language in Comment k created a caveat to the strict liability rule announced in *Hahn.* *Id.* at *2, 2012 U.S. Dist. LEXIS 15650 at *5. The Court rejected this argument, stating as follows:

> Plaintiff only cites law from other jurisdictions. But *Hahn* is the law of Pennsylvania, and the court in *Hahn* did not

recognize this caveat in Comment k. Other courts have interpreted *Hahn* as imposing an absolute bar to strict liability claims against both prescription drug manufacturers and medical device manufacturers. While other jurisdictions might recognize caveats to Comment k's exclusion of strict liability claims, this Court must apply Pennsylvania law, which does not recognize such caveats. Plaintiff's claim for strict liability is precluded by Pennsylvania law, and Count II of Plaintiffs' complaint is dismissed for failure to state a claim.

*Id.* at *2, 2012 U.S. Dist. LEXIS 15650 at *5–6 (internal citations omitted). This Court agrees with the *Horsmon* Court and concludes that such a caveat does not exist under Pennsylvania law. Therefore, Plaintiff's strict liability claim is not viable under Pennsylvania law.

Because the Court finds that Plaintiffs' strict liability claim is not viable under Pennsylvania law, even assuming that Plaintiffs were able to allege a parallel claim under a strict liability theory, permitting Plaintiffs' to amend their Complaint with respect to the strict liability claim would be futile. Plaintiffs' strict liability claim (Count I) is therefore dismissed without leave to amend. Plaintiffs' negligence claim (Count III) is dismissed as preempted by federal law. As stated in the following Order, Plaintiffs are granted 21 days in which to amend their Complaint with respect to Count III.

**B. Breach of Implied and Express Warranties (Count V)**

Defendant asserts in its Motion to Dismiss that Plaintiffs' warranty claims are preempted by federal law under the MDA,

---

types of defects-design defects, manufacturing defects, and failure to warn defects.

**11.** The Court notes that in Section 402A, Comment k, this phrase appears as follows: "properly prepared and marketed, and proper

warning is given." Because the Court finds no substantive difference between these two formulations of Comment k's language, for the purposes of the instant motion, the Court adopts Plaintiffs' formulation.

Plaintiffs' claims for breach of implied warranties of merchantability and fitness for a particular.purpose are barred by Pennsylvania law, and Plaintiffs fail to state a plausible claim for breach of express warranties. (*See* Doc. No. 11.) In its Sur–Reply Brief, Defendant also asserts that Plaintiffs' breach of warranty claims are barred by the statute of limitations. (*See* Doc. No. 29 at 6–8.) The Court will address Defendant's statute of limitations defense first, followed by Defendant's preemption argument, for Plaintiffs breach of implied and express warranties claims separately, beginning with Plaintiffs' breach of implied warranties claim. The Court will also address Defendant's arguments that Plaintiffs' claims for breach of implied warranties of merchantability and fitness for a particular purpose are barred by Pennsylvania state law and Plaintiffs' breach of express warranties claim is insufficiently pled, respectively.

## 1. Breach of Implied Warranties

### a. Statute of Limitations

The law of the Third Circuit permits a limitations defense to be raised by motion under Federal Rule of Civil Procedure 12(b)(6) (the so-called "Third Circuit Rule"). *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002). *See* also *Riggs v. AHP Settlement Trust,* No. 10–2824, 2010 WL 3749476, 2010 U.S. Dist. LEXIS 102780 (E.D.Pa. Sept. 24, 2010) (applying the Third Circuit Rule in a diversity case). Under Pennsylvania law, the time period for bringing an action for breach of a contract for sale is governed by Article 2 of the Uniform Commercial Code, as adopted in 13 Pa. Cons.Stat. § 2725. The statute states as follows:

(a) *General rule.*—An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(b) *Accrual of cause of action.*—A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

13 Pa. Cons.Stat. § 2725.

Whether an implied warranty can be "explicitly" extended forward has not been squarely decided by the Supreme Court of Pennsylvania. *Compare Cucchi v. Rollins Protective Servs. Co.,* 524 Pa. 514, 574 A.2d 565, 572–74 (1990), (explaining that although "the term 'explicit' might seem to eliminate the possibility of implied prospective warranties, the better view is that warranties explicitly extending to future performance may be both express and implied by content and circumstances sufficiently specific as to unequivocally refer to future performance") (plurality opinion) *with Nationwide Ins. Co. v. General Motors Corp.,* 533 Pa. 423, 625 A.2d 1172, 1178 (1993) (holding that warranty language did not explicitly extend the terms of any implied warranties and adding that "the great weight of authority takes the position that an implied warranty, by nature, cannot 'explicitly' extend to future performance"). The Supreme Court of Pennsylvania's most recent expositions on this issue suggest that implied warranties cannot be so extended. *See Nationwide,* 625 A.2d at 1178; *Keblish v. Thomas Equip., Ltd.,* 541 Pa. 20, 660 A.2d 38, 40 n. 1 (1995) (explaining that the precedential authority of *Cucchi* is limited to the facts of that case because there was no majority

opinion). *See also Simons v. Mercedes–Benz of North Am., Inc.,* No. 95–2705, 1996 WL 103796, at \*4, 1996 U.S. Dist. LEXIS 2695, at \*4 (E.D.Pa. March 7, 1996) (applying *Nationwide* and holding that "[w]hile additional time may be permitted for express warranties that extend to future performance, implied warranty claims must be filed within four years of delivery.").

■ Under this view, which this Court predicts would be explicitly adopted as law by the Supreme Court of Pennsylvania if the Court had occasion to rule on the issue, Plaintiffs' implied warranty claims are not timely because the statute of limitations expired in 2003—four years after the cause of action accrued in 1999, when the device was implanted in Plaintiff-wife. See 13 Pa. Cons.State. § 2725; *Horsmon v. Zimmer Holdings,* No. 11–1050, 2012 WL 423434, at \*2–3, 2012 U.S. Dist. LEXIS 15650, at \*6 (W.D.Pa. Feb. 8, 2012) (in suit for breach of warranty related to hip implant, stating that tender of delivery, for purposes of calculating the running of the statute of limitations under 13 Pa. Cons. State. § 2725, occurred on the date on which Plaintiff had hip replacement surgery). Therefore, Plaintiffs' breach of implied warranties claim is barred by the statute of limitations.

**b. Preemption**

■ Even assuming, however, that an implied warranty can be explicitly extended forward and that the implied warranties were so extended here, Plaintiffs' implied warranty claims are preempted by federal law. Plaintiffs allege that Defendant breached implied warranties of merchantability and fitness for a particular purpose, arising under Pennsylvania law. (*See* Doc. No. 1–2 at 16–18.) As explained above, the Federal Government has established requirements applicable to the device at issue because the device is a medical device that obtained premarket approval by the FDA pursuant to the MDA. Because the MDA expressly preempts any requirement that is "different from, or in addition to any requirement applicable ... to the device," 21 U.S.C. § 360k(a); *see Riegel v. Medtronic, Inc.,* 552 U.S. 312, 321, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), to properly state a claim for a breach of an implied warranty, Plaintiffs' must premise their claims on a violation of FDA regulations such that the state duties parallel, rather than add to, federal requirements. *See Riegel,* 552 U.S. at 330, 128 S.Ct. 999. Absent an allegation of such a violation, Plaintiffs' claims merely assert that the device was unsafe or ineffective despite the PMA process, which premises liability on a requirement different from or in addition to the FDA requirements applicable to the device. *See id.* at 325, 128 S.Ct. 999; *Williams v. Cyberonics, Inc.,* 388 Fed. Appx. 169, 171 (3d Cir.2010).

This Court finds no allegation of a violation of federal regulations in Plaintiffs' breach of implied warranties claim (Count V). Unlike in Plaintiffs' strict liability and negligence claims, neither does the Court find any language relating to Plaintiffs' breach of implied warranties claim that can reasonably be construed as a parallel claim. Rather, Plaintiffs' implied warranty claims are all premised on state law requirements other than those imposed by the FDA through the PMA process. *See Davenport v. Medtronic, Inc.,* 302 F.Supp.2d 419, 434 (E.D.Pa.2004) (citing *Michael v. Shiley,* 46 F.3d 1316, 1324–25 (3d Cir.1995), abrogated on other grounds) ("An implied warranty claim is centered around the accepted standards of design and manufacture of products in the state of Pennsylvania."). Therefore, Plaintiff's implied warranty claims are preempted by federal law.

### c. Pennsylvania State Law

■ Defendant's final argument with respect to Plaintiffs' breach of implied warranties claim is that Plaintiffs' implied warranty claims [12] are barred by Pennsylvania law. Even assuming Plaintiffs could find a way to assert that Defendant breached implied warranties in a manner that would not require this Court or a jury to find that the device was flawed despite conforming to federal requirements, "Pennsylvania courts have held that the nature of prescription drugs *and* prescription medical devices precludes claims for breach of implied warranty." *Kester v. Zimmer Holdings, Inc.*, 2010 WL 2696467, at *11, 2010 U.S. Dist. LEXIS 59869, at *32–33 (W.D. Pa. June 16, 2010) (citing *Parkinson v. Guidant Corp.*, 315 F.Supp.2d 741, 752–53 (W.D.Pa. 2004)).[13] The Court thus finds that allowing Plaintiffs to amend their Complaint to assert a parallel claim is futile because, even assuming an implied warranty can be explicitly extended forward and a parallel claim can be asserted, Plaintiffs' implied warranty claims are not viable under Pennsylvania state law. Therefore, Plaintiffs' implied warranty claims are dismissed without leave to amend.

### 2. Breach of Express Warranties

#### a. Statute of Limitations

■ With respect to the running of the statute of limitations for Plaintiffs' express warranty claims, the Court finds that it is impossible to determine from the face of the Complaint whether the express warranties allegedly made by Defendant were explicitly extended forward. Although the Third Circuit Rule permits a defendant to raise a statute of limitations defense in a 12(b)(6) motion, *Robinson*, 313 F.3d at 135, to obtain relief on this ground "the time alleged in the statement of a claim [must show] . . . that the cause of action has not been brought within the statute of limitations." *Hanna v. United States Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(b)." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir.1978).

■ Plaintiffs allege that Defendant expressly warranted that the device was safe, effective, durable, free from defects, merchantable, and fit and proper for its intended use. (*See* Doc. No. 1–2 at 16–18.) However, nowhere in the Complaint does Plaintiff identify any of the representations made by Defendant that give rise to these express warranties. Under Pennsylvania law, the date on which a cause of action accrues depends in part on whether the warranty was explicitly extended forward. *See* 13 Pa. Cons.State. § 2725(b). An analysis of whether a "warranty 'explicitly' extends to future performance must focus on the express language of the language of the warranty." *Nationwide*, 625 A.2d at 1175. Without an opportunity to review the statements that Plaintiff alleges gives rise to the express warranties, the

---

12. Plaintiffs claim that Defendant breached implied warranties of merchantability and fitness for a particular purpose.

13. The Court acknowledges that in *Doughtery v. C.R. Bard, Inc.*, 2012 WL 2940727, at *6–7, 2012 U.S. Dist. LEXIS 100374, at *26–31, the Court permitted Plaintiff's claim for breach of implied warranty of merchantability to go for-

ward to the extent the claim was based on an alleged manufacturing defect. However, because, for reasons explained above, *see supra*, n. 10, this Court does not follow the *Doughtery* Court's holding that Pennsylvania law does not preclude a strict liability claim based on a manufacturing defect, this Court does not extend the *Doughtery* Court's reasoning to

Court cannot determine whether the alleged express warranties were explicitly extended forward, which in turn prevents this Court from determining the date on which the cause of action accrued. Absent the date on which the cause of action accrued, the Court cannot calculate the expiration of the four-year statute of limitations period. Consequently, the question of whether Plaintiff's breach of express warranties claim is barred by the statute of limitations is not apparent from the face of the Complaint and therefore Defendant's Motion to Dismiss Plaintiffs' breach express warranties claim on this ground cannot be resolved on the current record.

### b. Preemption

 Defendant's argument that Plaintiffs' breach of express warranties claim is preempted by federal law is similarly unavailing. Defendant cites caselaw from outside this Circuit to support its assertion that proving a breach of an express warranty that warrants the safety or effectiveness of a device approved pursuant to the PMA process contradicts the FDA's pre-market approval determination in the same manner as implied warranty and tort claims, and that courts have therefore routinely held that such express warranty claims are also preempted. (*See* Doc. No. 29 at 3 n. 2.) Indeed, since *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), which did not specifically address preemption with regard to a claim for breach of an express warranty,[14] *see Riegel*, 552 U.S. at 321 n. 2, 128 S.Ct. 999, several courts have found such

claims preempted. *See Huber v. Howmedica Osteonics Corp.*, No. 07–2400(JLL), 2009 WL 2998160, 2009 U.S. Dist. LEXIS 91526 (D.N.J. Mar. 10, 2009) (collecting cases). This Court, however, is bound by *Michael v. Shiley*, 46 F.3d 1316 (3d Cir. 1995), abrogated on other grounds, a pre-*Riegel* decision holding that the MDA does not preempt a breach of express warranty claim that was based on statements found on product packaging. *Shiley*, 46 F.3d at 1325.

In *Shiley*, the Court found that "[e]xpress warranties arise from the representations of parties which are made the basis of the bargain and do not result from the independent operation of state law." *Id.* The Third Circuit reasoned that when a party gives an express warranty, the party, not the state, defines the substantive obligations of the contract. *Id.* Therefore, although state law provides for the enforcement of the parties' bargain, express warranties arise from a contractual commitment and not state law. *Id.* Although *Shiley* pre-dates *Riegel*, as discussed in *Huber v. Howmedica Osteonics Corp.*, No. 07–2400(JLL), 2008 WL 5451072, at *3–4, 2008 U.S. Dist. LEXIS 106479, at *11 (D.N.J. Dec. 31, 2008), "[n]othing in *Riegel* explicitly undermines [the Third Circuit's] rationale for not preempting breach of express warranty claims." *See also Delaney v. Stryker Orthopaedics*, No. 08–03210(DMC), 2009 WL 564243, at *5, 2009 U.S. Dist. LEXIS 16865, at *14 (D.N.J. Mar. 5, 2009). Absent guidance from the Supreme Court, the *Shiley* opinion controls. *Delaney*, 2009 WL 564243, at *5, 2009 U.S. Dist. LEXIS 16865, at *14. *See*

---

Plaintiffs' claim for breach of implied warranties here.

**14.** In *Riegel*, the district court found that Plaintiff's breach of express warranty claim was not preempted and later granted summary judgment in favor of the Defendant on other grounds. *Riegel v. Medtronic, Inc.*, 552

U.S. 312, 321 n. 2, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008). The Court of Appeals affirmed this determination without addressing the issue of preemption, *see Riegel v. Medtronic, Inc.*, 451 F.3d 104 (2d Cir.2006) *aff'd*, 552 U.S. 312, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008), which was therefore never presented to the Supreme Court.

*also Bentzley v. Medtronic, Inc.,* 827 F.Supp.2d 443, 454–55 (E.D.Pa.2011) (holding that a breach of express warranty claim is not preempted by MDA, relying on *Shiley,* 46 F.3d at 1325); *Davenport v. Medtronic, Inc.,* 302 F.Supp.2d 419, 433 (E.D.Pa.2004). Therefore, Plaintiff's express warranty claim is not preempted.

### c. The Sufficiency of Plaintiffs' Pleading

 Defendant alternatively argues that Plaintiffs have failed to state a plausible claim for breach of express warranties under Pennsylvania law. (Doc. No. 11 at 2.) The Court agrees that Plaintiffs fail to sufficiently plead their breach of express warranties claim. Under Pennsylvania law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa. Cons. Stat. § 2313(a)(1). Likewise, "[a]ny description of the goods which is made a part of the bargain creates an express warranty that the goods shall conform to the description," 13 Pa. Cons.Stat. § 2313(a)(2), and "[a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model," 13 Pa. Cons.Stat. § 2313(a)(3).

In order to establish that there has been a breach of an express warranty, a plaintiff must demonstrate that some form of promise of affirmative statement was made. *Delaney,* 2009 WL 564243, at *5, 2009 U.S. Dist. LEXIS 16865, at *13 (summarizing Pennsylvania law, citing 13 Pa. Cons.Stat. § 2313). A "mere recitation of the elements of a cause of action, absent any factual support, specification of a particular promise that became the basis of the bargain, or a showing that the promise was directed at the consumer, is insufficient to withstand dismissal." *Gross v. Stryker Corp.,* 858 F.Supp.2d 466, 502 (W.D.Pa.2012) (citing *Kester v. Zimmer Holdings, Inc.,* No. 2:10–cv–00523, 2010 WL 2696467, at *9–11, 2010 U.S. Dist. Lexis 59869, at *27–31 (W.D.Pa. June 16, 2010)). As stated above, Plaintiffs have alleged that Defendant expressly warranted that the device was safe, effective, durable, free from defects, merchantable, and fit and proper for its intended use. (*See* Doc. No. 1–2 at 16–18.) Plaintiffs assert that these warranties were made through various sources which Plaintiffs generally and without specificity describe to include Defendant, its authorized agents or sales representatives, publications, package inserts, the internet and other communications intended for physicians, medical patients, and the general public, and certain documentation provided to patients including Plaintiff-wife "either directly [by Defendant] or through others." (*See* Doc 1–2 at 16–17.) While Plaintiffs' Complaint repeatedly alleges that Defendant made such warranties, Plaintiffs fail to identify any affirmation of fact or promise giving rise to these alleged warranties. Moreover, Plaintiffs have not pled any details regarding the content of the express warranties. Because Plaintiff cannot allege that any particular affirmation of fact or promise became "part of the basis of the bargain" without alleging an affirmation of fact or promise, *Horsmon v. Zimmer Holdings, Inc.,* No. 11–1050, 2011 WL 5509420, at *4, 2011 U.S. Dist. LEXIS 130415, at *12 (W.D.Pa. Nov. 10, 2011), Plaintiffs' Complaint fails to allege facts sufficient to demonstrate a plausible claim for breach of express warranties under Pennsylvania law.

The *Horsmon* Court, discussed above,[15] came to a similar conclusion in *Horsmon v.*

---

**15.** *See supra,* Part V, Section A.

*Zimmer Holdings, Inc.*, No. 11–1050, 2011 WL 5509420, 2011 U.S. Dist. LEXIS 130415 (W.D.Pa. Nov. 10, 2011). There, Plaintiff, a recipient of a total hip replacement, asserted a claim for breach of express warranty against the corporations that designed, manufactured, and sold the components implanted in her hip. *Id.* at *1, 2011 U.S. Dist. LEXIS 130415 at *1–2. In language similar to that found in the Complaint in this case, Plaintiff alleged that Defendant "expressly warranted in its written literature, advertisements and representations of its representatives and agents that its acetabular systems, bone screws, liners and other related components were safe, effective, fit, and proper for the use for which they were intended." *Id.* at *4, 2011 U.S. Dist. LEXIS 130415 at *10–11. The *Horsmon* Court concluded that, despite these allegations, Plaintiff did not allege "any particular affirmation of fact or promise that would give rise to a reasonable inference that Defendant expressly warranted that its products were safe, effective, fit and proper for the use for which they were intended." *Id.* at *4, 2011 U.S. Dist. LEXIS 130415 at *11–12. (internal citations and quotation marks omitted). Here, Plaintiffs have alleged that Defendant has made similar express warranties, but similarly have not supplemented these allegations with information regarding the affirmations or promises made by Defendant that give rise to these warranties. Like in *Horsmon*, these allegations, standing alone, are not sufficient to state a claim for breach of express warranties.

In Plaintiffs' Brief in Opposition, Plaintiffs request an opportunity to amend their Complaint if the Court agrees with the Defendant that the express warranty claim, as presently pled, fails to state a claim. (*See* Doc. No. 16 at 13.) Providing Plaintiffs with an opportunity to amend their breach of express warranties claim would not be futile because Plaintiffs could, in a properly pled complaint, assert a claim for breach of an express warranty. The Court notes that even assuming that Plaintiffs amended Complaint sufficiently states a claim for which relief can be granted, Plaintiffs' claim may still be barred under the statute of limitations. Whether the statute of limitations for Plaintiffs' breach of express warranties claim has run, however, depends on precisely what was warranted.[16] Thus, Plaintiff's breach of express warranties claim is dismissed for failure to state a claim, with leave to amend.

## C. Loss of Consortium (Count VI)

Plaintiffs also assert a loss of consortium claim (Count VI) that is derivative of Plaintiffs' other claims. As more fully stated in the following Order, Plaintiffs' loss of consortium claim is limited according to the claims on which it derives.[17]

**16.** As discussed above, if Defendant made an express warranty that was explicitly extended forward, Plaintiffs' claim may be timely. If Defendant made an express warranty that was not extended forward and the cause of action therefore accrued on the date of delivery, Plaintiffs' claim, even when properly pled, may be barred for a failure to be timely asserted. Because this issue cannot properly be decided on the basis of the current record, the Court does not address it at this time.

**17.** The Court notes that Defendant does not independently move to dismiss the loss of consortium claim in its Motion to dismiss. Rather, in its Motion to Dismiss and Sur–Reply Brief, Defendant asserts that all of Plaintiffs' claims are preempted by federal law. (*See* Doc. No. 11 at 1; Doc. No. 29 at 9.) Additionally, in Defendant's Brief in Support of Motion to Dismiss and Sur–Reply Brief, Defendant asserts that the Court should dismiss the Complaint in its entirety for "the foregoing reasons." (Doc. No. 12 at 19; see Doc. No. 29 at 9.) Because the Court finds

## VI. CONCLUSION

For the foregoing reasons, all remaining Counts of Plaintiffs' Complaint—Counts I, III, V and VI—do not survive Rule 12(b)(6) scrutiny. However, the Court finds that amendment would be futile only with respect to Count I and Plaintiffs' breach of implied warranties claim in Count V. Accordingly, the Court dismisses Count I and Plaintiffs' breach of implied warranties claim in Count V without leave to amend. Count III and Plaintiffs' breach of express warranties claim in Count V are dismissed with leave to amend. Count VI is dismissed without leave to amend to the extent that it derives from Count I and Plaintiffs' breach of implied warranties claim in Count V. Count VI is dismissed with leave to amend to the extent it derives from Count III and Plaintiffs' breach of express warranties claim in Count V. An appropriate order follows.

### ORDER

AND NOW, this 28th day of September 2012, this matter coming before the Court on Defendant's "Motion to Dismiss" (Doc. No. 11) and Plaintiffs' opposition thereto (Doc. No. 15), and in accordance with the Memorandum, **IT IS HEREBY ORDERED** that the motion is **GRANTED.** To wit, the motion is **GRANTED WITHOUT LEAVE TO AMEND** to the extent it seeks dismissal of Count I, Plaintiffs' breach of implied warranties claim in Count V, and Count VI to the extent it derives from these counts. The motion is **GRANTED WITH LEAVE TO AMEND** to the extent it seeks dismissal of Count III, Plaintiffs' breach of express warranties claim in Count V, and Count VI to the

extent it derives from these Counts. **IT IS FURTHER ORDERED** that Plaintiffs are granted 21 days to file an amended Complaint, as permitted by this Order.

---

that Defendants' failure to specifically assert that Plaintiffs' loss of consortium claim should be dismissed in the Motion to Dismiss itself does not result in prejudice to Plaintiffs, the Court addresses the argument, implicit in Defendant's Brief in Support of Motion to Dismiss and Sur–Reply Brief, that Plaintiffs' loss of consortium claim should be dismissed to the extent that it derives from Plaintiffs' other claims.